UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHARLES RODGERS,

    Petitioner,

v.                                   CAUSE NO. 3:21-CV-230 DRL-MGG

WARDEN,

    Respondent.

OPINION AND ORDER

Charles Rodgers, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary proceeding at Miami Correctional Facility (MCF 20-10-0249) in which he was found guilty of attempted assault of staff. The petition is denied.

The charge was initiated on October 16, 2020, when Sergeant Justin McCray wrote a conduct report stating as follows:

> On 10/16/2020 at approximately 2:40 p.m. I, Sergeant Justin McCray was working Phase I yard with my K-9 partner when Phase two had Multiple 10-10's[1] with weapons in different houses. I decided to assist NHU on phase II. I arrived to NHU at approximately 2:42 pm and was advised that there were multiple offenders with weapons. Shift Supervisor ordered QRT and K-9 to enter and lock the side down. Once the 3/4 slider opened I entered with my K-9 partner and order multiple offenders to lock down. They stated they belonged to the other side. I then ordered all offenders to back up and get on the ground. Offender Rodgers, Charles 136164 NHU 237 later identified by his state issued I.D. then got in a boxer stance and took off his sweatshirt and Stated, "Fuck you and your dog ill beat his ass." At that point Sergeant A. Calloway deployed the MK-9 to change the intended thought process of Offender Rodgers, Charles, 136164, however it was not effective. Offender Rodgers, Charles, 136164 then turned around and

---

[1] The respondent does not explain what is meant by "10-10," but, according to Mr. Rodgers, this refers to a fight between inmates. (ECF 21 at 4.)

> refused to get on the ground. I gave two more verbal orders to Offender Rodgers, Charles, 136164 to get on the ground, in which. Offender Rodger, Charles, 136164 refused to comply with. I then gave my K-9 partner the command to subdue Offender Rodgers, Charles, 136164 at which time my K-9 partner bit the left leg of Offender Rodgers, Charles, 136164. Offender Rodgers, Charles, 136164 then turned toward my K-9 partner and attempted to assault my partner. Sergeant A. Calloway then deployed the MK-9 a second time to change Offender Rodgers, Charles, 136164 thought process again. At this time my K-9 partner disengaged due to the MK-9 also hitting him. I gave multiple orders to Offender Rodgers, Charles, 136164 to get on the ground and Offender Rodgers, Charles, 136164 continued to refuse. Offender Rodgers, Charles 136164 turn towards us and turned away from us again. I gave multiple orders to get on the ground, once again Offender Rodgers, Charles, 136164 continued to ignore. I then gave my K-9 Partner the command to re-engaged and he bit Offender Rodgers, Charles 136164 left side of his shorts and boxers. I then pulled my K-9 partner to attempted to secure Offender Rodgers, Charles 136164 to the ground. At that time Offender Rodgers, Charles 136164 complied with orders and submitted to mechanical restraints. Offender Rodgers, Charles 136164 was then escorted to RHU for a decontamination shower with no further incidents.

(ECF 10-1) (errors in original). Photographs were also taken of Mr. Rodgers's leg showing the dog bite. (ECF 10-2; ECF 10-3.)

On October 23, 2020, Mr. Rodgers was formally notified of the charge. He pleaded not guilty and requested a lay advocate, and one was appointed for him. He requested witness statements from inmate Ferrell King, an inmate he identified as "Jackson N349/350," and an unidentified inmate living in cell N349/350. When asked to describe their expected testimony, he stated, "Tell the truth." He also requested review of the surveillance video, which in his opinion would show that "I had my hands up the whole time." (ECF 10-3; ECF 10-4.)

Prior to the hearing, the hearing officer reviewed the surveillance video and summarized it as follows:

> I (A. Goodridge) reviewed the DVR of Offender Rodger, Charles, #136164 in case MCF-20-2-10-0249 for attempted assault on staff on 10-16-2020. When I went to review the DVR I am able to see Offender Rodger is on the 3/4 side of NHU. I can see that he is involved in the situation that takes place on the 3/4 side of NHU. Once QRT arrives to the floor to take control of the situation, Offender Rodgers can be seen taking his shirt off and puffing out his chest in an aggressive manor. Offender Rodger can then be seen moving his arm around, and pointing in the direction of staff. Offender Rodger then turns around and faces away from staff. He does have his arm in[] the air. I am then [un]able to see what takes place due to Offender Rodger moving behind the stair case out of view of the camera.

(ECF 10-6.) A witness statement was obtained from inmate King, who stated: "The national guard let him over to the 3/4 side to help lock people down, before the K-9 showed up on that side. He had his hands up the whole time. He was just trying to get back to his side of the house when he was bit by the dog." (ECF 10-7.) The screening officer tried to locate an inmate named Jackson per Mr. Rodgers's request, but there was no inmate with that name living in N349/350 or the neighboring cells. (ECF 10-9.) A witness statement was obtained from the inmate living in that cell, Brandon Holbrook, but he stated simply, "I don't know." (ECF 10-8.)

On November 6, 2020, the hearing officer held a hearing on the charge. Mr. Rodgers reiterated his claim that his "hands were in the air" the whole time. He further claimed that he "was not being aggressive" when he took his shirt off and argued that he "wasn't involved in any of it." Based on the evidence, the hearing officer found Mr. Rodgers guilty. He was sanctioned with the loss of 180 days of earned-time credits, a temporary restriction on his commissary privileges, and a demotion in credit-earning class. The hearing officer chose these sanctions due to the seriousness of the offense, the frequency and nature of Mr. Rodgers's disciplinary infractions, and his attitude and

3

demeanor during the hearing. (ECF 10-5.) Mr. Rodgers's administrative appeals were denied. (ECF 10-10.) Thereafter, he filed this petition.

When prisoners lose earned-time credits in a disciplinary proceeding, the due process clause of the Fourteenth Amendment guarantees them certain procedural protections: (1) at least 24 hours advance written notice of the charge; (2) an opportunity to be heard by an impartial decisionmaker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the decisionmaker of the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there also must be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Mr. Rodgers raises three claims in his petition. The court understands him to be arguing that he was denied evidence, that the hearing officer's report of the surveillance video was "false," and that the hearing officer was not impartial. (ECF 1 at 2-3.)

The record reflects that Mr. Rodgers's due process rights were not violated. Regarding his right to present evidence, the full panoply of rights available at a criminal trial are not applicable in the prison disciplinary context. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). Nevertheless, an inmate has a right to request and present evidence in his defense when consistent with institutional safety and correctional goals. *Wolff*, 418 U.S. at 564. At screening, Mr. Rodgers requested a review of the video evidence, and this was completed by the hearing officer prior to the hearing. He also requested a witness statement from inmate King, and one was obtained pursuant to his request. The

screening officer attempted to locate an inmate named Jackson living in N349/350, but the record shows there was no such inmate in that cell or the neighboring cells. The hearing officer took the extra step of obtaining a statement from the inmate who did live in that cell even though his last name was not Jackson, but the inmate did not know anything about the incident. Mr. Rodgers does not clearly outline what other evidence he wanted to present, nor has he explained how such evidence would have been exculpatory. *See Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003).

Even if inmate Jackson, assuming he could be found, would have reiterated inmate King's account that Mr. Rodgers "had his hands up the whole time," the surveillance video spoke for itself. This court has reviewed the video and concludes that the hearing officer reasonably interpreted some of Mr. Rodgers's actions during this incident as "aggressive." When Sergeant McCray and his dog first entered the room, unlike other inmates who put up their hands or immediately got on the ground, Mr. Rodgers began gesturing toward Sergeant McCray in an angry manner. He then quickly took off his shirt and put his arms down forcefully, as if to flex his muscles or strike an authoritative pose. There is no sound on the video, but Mr. Rodgers appears to be saying something to Sergeant McCray in a heated tone. Although he does put his hands up at times, the court agrees with the hearing officer that a critical portion of this incident cannot be viewed because Mr. Rodgers turns away from Sergeant McCray and is obscured by a stairwell. Contrary to his claims, however, the video does not conclusively show that he was compliant and non-aggressive throughout this entire incident.

He may be complaining that the video evidence was kept from him. Under the due process clause, he had a right to request evidence in his defense, but not necessarily to review the evidence personally. *White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001). That is because "prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public." *Id.* The court has reviewed the surveillance video and concludes that if it were disclosed to Mr. Rodgers, it could jeopardize institutional safety. *See Wolff*, 418 U.S. at 566; *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Based on the court's viewing, there is also nothing exculpatory on the video. *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). The video is appropriately kept under seal. Additionally, as stated, the court's viewing of the video is in accord with the hearing officer's account, and Mr. Rodgers has not shown that the hearing officer's summary of the video evidence was "false."

To the extent he is challenging the sufficiency of the evidence, there only needs to be "some evidence" in the record to support the hearing officer's decision to satisfy due process. *Hill*, 472 U.S. at 455. "This is a lenient standard, requiring no more than a modicum of evidence." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). A conduct report alone can be sufficient evidence to support a finding of guilt. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Likewise, circumstantial evidence can be sufficient to satisfy the "some evidence" test. *See Meeks*, 81 F.3d at 721. It is not the role of the court on federal habeas review to reweigh the evidence or make its own determination of guilt or innocence; the question is solely whether there is some evidence to support the hearing officer's decision. *Webb*, 224 F.3d at 652.

That standard is satisfied. Mr. Rodgers was found guilty of attempting to assault the K-9 officer involved in this incident. The account of Sergeant McCray was that when he entered the room, Mr. Rodgers said to him, "Fuck you and your dog. I'll beat his ass." The sergeant further claims that when he deployed the dog to subdue Mr. Rodgers, Mr. Rodgers attempted to hit the dog. The surveillance video corroborates various aspects of Sergeant McCray's account, including that Mr. Rodgers took off his shirt and struck an aggressive pose, and then turned away from the sergeant during this incident. As stated, the rest of the incident cannot be viewed, but Sergeant McCray's account is sufficient evidence to support the hearing officer's determination.

Finally, Mr. Rodgers argues that the hearing officer was not impartial because she found him guilty. In his view, the only possible view of the evidence was that he did nothing wrong. Prison adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie*, 342 F.3d at 666. Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decisionmaker in the case. *Id.* Due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the event underlying the charge. *Id.* Notwithstanding Mr. Rodgers's assertion of bias, there is nothing in the record to reflect that the hearing officer was involved in any way in the underlying charge. The mere fact that the hearing officer found him guilty does not establish impermissible bias. *Liteky v. United States*, 510 U.S. 540, 555 (1994). The hearing officer had adequate reasons for finding him guilty.

7

For these reasons, the court GRANTS the respondent's motion to maintain evidence under seal (ECF 14), DENIES the petition (ECF 1), and DIRECTS the clerk to close this case.

SO ORDERED.

October 21, 2021

*s/ Damon R. Leichty*
Judge, United States District Court